IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| KEISHA ARNOLD, as next friend of minor, | § | |
| K.M., and KEITH JACKSON, in their | § | |
| individual capacity and on behalf of the | § | |
| estate of KEITH MURRIEL, JR. and the | § | |
| Statutory Beneficiaries, | § | |
|     *Plaintiffs,* | § | |
| | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:23-cv-00267-DPJ- |
| | § | FKB |
| | § | |
| AVERY WILLIS, KENYA MCCARTY, | § | |
| JAMES LAND AND CAZINOVA REED, | § | |
|     *Defendants.* | § | |

## PLAINTIFFS' FIRST AMENDED  ORIGINAL COMPLAINT
### (JURY TRIAL DEMANDED)

COMES NOW, Keisha Arnold, as next friend of minor, K.M. and Keith Jackson, in their

individual capacity, and on behalf of the Estate of Keith Murriel and all statutory beneficiaries,

complaining of Defendants, Avery Willis ("Willis"), Kenya McCarty ("McCarty"), James Land

("Land") and Cazinova Reed ("Reed"), and for cause would show the Honorable Court as

follows:

## I.        NATURE OF THE ACTION

1.        This is an action brought by the Plaintiffs against Jackson Police Officers Willis,

McCarty, Land and Reed for their use of excessive, deadly force and failure to render medical

aid, resulting in the death of Keith Murriel ("Murriel") under the color of law in violation of his

individual rights under the Fourth and Eighth Amendments of the United States Constitution and

in violation of his civil rights pursuant to 42 U.S.C. § 1983.  Furthermore, Plaintiffs and the

statutory beneficiaries, are entitled to recover damages arising from the decedent's wrongful

death as applied under 42 U.S.C § 1983 and all other applicable laws complaining of the various acts listed below and for their wrongful death cause of action.

2.      Defendants Willis, McCarty, Land and Reed, officers with the Jackson Police Department ("JPD"), consciously disregarded the rights of Murriel, knowing that the Policymakers would ratify and/or approve of their actions. The Defendant Officers' actions in repeatedly tasing Murriel, kneeing him in the head, placing him in a prone position without checking on him for over an hour, and not rendering in medical assistance or immediately contacting emergency personnel, was not that of a reasonable officer. The Defendant Officers were acting pursuant to the customs, policies and training, or lack thereof, received from JPD. For these civil rights violations and other causes of action discussed herein, Plaintiffs seek to hold the officers responsible and compensate them for their damages and the wrongful death of Murriel.

## II.      **PARTIES**

3.      Plaintiff, Keisha Arnold, as next friend of minor, K.M., is a citizen of the United States and a resident of Jackson, Mississippi.  Keisha Arnold  is the biological mother of K.M., the minor daughter and heir of the deceased, Keith Murriel.  Arnold brings this wrongful death action on behalf of K.M. and on behalf of all other statutory beneficiaries pursuant to MS Code § 11-7-13 as applied under 42 U.S.C § 1983.  Arnold also brings this survival action on behalf of the estate of Keith Murriel.

4.      Plaintiff, Keith Jackson, is a citizen of the United States and a resident of Jackson, Mississippi.  Keith Jackson is the biological son and heir of the deceased, Keith Murriel. Jackson brings this wrongful death action pursuant to MS Code § 11-7-13 as applied under 42 U.S.C § 1983.

5.      Defendant Avery Willis, upon information and belief, is a resident of Jackson Mississippi, and at all times material herein was a police officer for The CITY OF JACKSON. Willis may be served at 327 E. Pascagoula Street, Jackson, Mississippi 39201 or wherever he may be found.

6.      Defendant Kenya McCarty, upon information and belief, is a resident of Jackson Mississippi, and at all times material herein was a police officer for The CITY OF JACKSON. McCarty may be served at 327 E. Pascagoula Street, Jackson, Mississippi 39201 or wherever she may be found.

7.      Defendant James Land, upon information and belief, is a resident of Jackson Mississippi, and at all times material herein was a police officer for The CITY OF JACKSON. Land may be served at 327 E. Pascagoula Street, Jackson, Mississippi 39201 or wherever he may be found.

8.      Defendant Cazinova Reed, upon information and belief, is a resident of Jackson Mississippi, and at all times material herein was a police officer for The CITY OF JACKSON. Reed may be served at 327 E. Pascagoula Street, Jackson, Mississippi 39201 or wherever he may be found.

### III.      JURISDICTION AND VENUE

9.      Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth and Eighth Amendments of the United States Constitution and 42 U.S.C. § 1983, to redress the deprivation of rights, privileges and immunities guaranteed to decedent Murriel, by constitutional and statutory provisions

10.      Venue is proper in this court because the causes of action occurred within the Southern District of Mississippi, Jackson Division.

## IV.   <u>FACTS</u>

11.     On Saturday, December 31, 2022, Murriel was visiting a friend who was a guest at the Extended Stay America Hotel located at 572 Beasley Road, Jackson, MS 39206 ("Extended Stay Hotel"), an economy apartment hotel that offers short and long-term stays. There were no known rules, policies or laws that prohibited Murriel from visiting his friend at the Extended Stay Hotel. At no time was Murriel threatening or attempting to harm anyone nor did the Extended Stay Hotel prohibit anyone from visiting guests of the hotel or prevent the injuries sustained by Murriel.  Shortly before the incident occurred, Murriel advised his friend that he was going to stay the night but needed to go outside to meet with a friend for a brief moment. Murriel left his personal items in the room as he planned to return shortly.  While outside in the parking lot of the Extended Stay Hotel, a security officer, believed to be employed by the Extended Stay Hotel, began to harass Murriel and requested that Murriel leave the property even though Murriel was simply in the parking lot of the Extended Stay Hotel, was not harming anyone and was at the Extended Stay Hotel visiting a friend.

12.     The security officer called 911 and falsely reported Murriel as a trespasser, although Murriel was an invited guest. In response to the security officer's call, at or around 7:28 p.m., Defendants Willis and McCarty arrived at the Extended Stay Hotel.

13.     Defendants Willis and McCarty immediately approached Murriel in an aggressive manner, never asking Murriel why he was at the Extended Stay Hotel, threatened Murriel and demanded that he leave the property.  Murriel complied with the officers' orders and turned and walked away from the officers, left the Extended Stay Hotel property and walked towards the Waffle House restaurant next door.  Defendants Willis and McCarty followed Murriel onto the Waffle House property, then turned and walked back onto the Extended Stay Hotel grounds. At

no time did Defendants Willis and McCarty attempt to talk to Murriel or explain to him why they had been called out.

14.    At or around 7:30 p.m., Murriel returned to the Extended Stay Hotel to retrieve his personal items from his friend's room, where he planned to stay that evening.  Defendants Willis and McCarty never gave Murriel any opportunity to explain why he had returned to the property and, instead, without any explanation or warning, Defendant Willis jumped a helpless Murriel from behind and viciously tackled Murriel to the ground.  Defendants Willis and McCarty knelt on top of Murriel, and repeatedly and in an improper manner, tased Murriel, although he was not resisting or attempting to harm the officers or any other person.  Despite being attacked by Defendants Willis and McCarty, Murriel never attempted to touch any of the officers or make any gestures that would make it appear he was trying to the harm the officers or anyone else.  Defendants Willis and McCarty can be seen repeatedly tasing Murriel while Murriel is on the ground pleading for the officers to stop.  Murriel, who was not resisting or trying to harm anyone, can actually be heard in the video recording begging the officers to "Please stop!"

15.    At or around 7:44 p.m., Defendant Land, a JPD officer, arrived on the scene. Without attempting to determine what was taking place and why the officers were tasing and using their knees to physically assault Murriel, Defendant Land immediately joined in and began discharging his taser into Murriel.  Murriel, who was in severe pain, pleaded with the three Defendant Officers to please stop their assault but they would not. According to witnesses, Defendants Willis, McCarty and Land repeatedly tased Murriel while Murriel was on the ground enduring the painful voltage being discharged into his body. Murriel can be heard in the video screaming, "Please stop, man!", clearly in pain from the excessive and repeated tasing. As

Murriel pleaded for the officers to stop, Defendants Willis, McCarty and Land can be heard shouting, "Let's go! Get him again! Get him again!"

16.     At one point, a citizen bystander called 911 on the officers, informing the dispatcher of the repeated tasing of Murriel. That communication was captured by JPD dispatch:

> **Dispatch: Okay, there is a citizen on the phone saying that you've tased that person out there about four times, and he hasn't heard anybody ask for AMR.**
> **Officer: We're working with him right now, that's why we called for additional units. But yes, taser has been deployed.**

Despite tasing Murriel multiple times, the Defendant Officers failed to immediately contact a supervisor/sergeant to report that they had deployed their tasers. Furthermore, the Defendant Officers did not immediately request that a paramedic be sent out to attend to Murriel.

17.     During the incident, the Defendant Officers repeatedly referred to Murriel as a "Nigger," used profanity, and threatened to use additional force on Murriel although he was not resisting and had not committed a penal offense. Defendants Willis, McCarty and Land repeatedly tased Murriel, and used unnecessary force, including pending Murriel's head into the ground with their knees, as Murriel lay prone on the pavement with his arms outstretched.

18.     After tasing Murriel at least 80 times, Murriel became nonresponsive. Defendants Willis, McCarty and Land handcuffed Murriel, who was approximately six foot three inches tall, and placed him in a prone position in the backseat of a police cruiser. The Defendants placed the nonresponsive Murriel in the backseat of the police cruiser by forcefully pushing and twisting his head so that they could close the door to the cruiser. The officers left Murriel in the police cruiser unattended, face down on his stomach, with his head twisted and bent, for approximately one hour although they had observed him barely moving and unable to talk. It is well known that placing a subject face-down in a prone position after a use of force creates a substantial threat to

life. At no time did Defendants Willis, McCarty and Land check on Murriel to determine if Murriel was okay although they had observed that he was unresponsive, unable to walk on his own and in need of medical attention.  Murriel was left on the backseat of the police vehicle for at least one hour without receiving any medical assistance and instead of checking on Murriel's well-being, Defendants Willis, McCarty and Land joked about how they assaulted Murriel and the condition he was in.  It was apparent that Murriel was clearly in medical distress and in need of immediate medical assistance, but Defendants Willis, McCarty and Land failed to provide any.  Defendants Willis, McCarty and Land observed that Murriel was nonresponsive but failed to act as a reasonable officer would have under the exact same circumstances, they did not immediately contact a supervisor and an emergency personnel to report the tasing and were deliberately indifferent to Murriel's medical needs.

19.      At or around, 7:53 p.m., Defendants Willis, McCarty and Land finally called for AMR assistance but still did not check on Murriel as he struggled to stay alive in the backseat of the police cruiser.  Shortly after Murriel was placed in the backseat of the police vehicle, Defendant Cazinova arrived on the scene.  At no time did Defendant Cazinova check on Murriel. In fact, Defendants Willis, McCarty and Land joked with Cazinova about their encounter with Murriel and advised Cazinova of Murriel's condition but at no point did Defendant Cazinova check on Murriel to determine whether he was okay. Defendant Cazinova failed to conduct himself as a reasonable officer and made no efforts to assist Murriel, who was in medical distress.

20.      At or around 8:50 p.m., almost one hour after being dispatched, AMR finally arrived on the scene to assist Murriel.  The paramedics checked for a pulse and immediately started working on Murriel who was not responding.  Defendants Willis, McCarty, Land and

Cazinova left Murriel in the police cruiser for over an hour without checking on Murriel or providing him with any medical assistance. Defendants Willis, McCarty, Land and Cazinova were fully aware that Murriel needed immediate medical attention but failed to take any action. At some point, Murriel was transported by ambulance to St. Dominic Hospital where he was pronounced dead. Murriel's cause of death was cardiac arrest due to the physical restraint and positional asphyxia complicated by the excessive amounts of Conductive Energy Device Discharges with the manner of death being classified as a "Homicide."

21.     The U.S. Supreme Court has consistently stated for some time that there is an obligation to provide adequate medical care to detainees and prisoners. The source of that obligation stems from the Eighth Amendment to the U.S. Constitution, and its prohibition on "cruel and unusual" punishment. As a result of the cruel and unusual treatment, Murriel experienced severe and excruciating pain after being repeatedly tased by Defendants Willis, McCarty and Land. As a result of the Defendants Willis, McCarty, Land and Cazinova failure to render proper medical aid and attention to Murriel, he died. Murriel suffered extreme and severe mental and emotional distress, agony, and anxiety prior to his death.

22.     Defendants Willis, McCarty, Land and Cazinova deliberately chose not to provide any medical assistance to Murriel despite the obvious need to do so.  As a direct result of Defendants Willis, McCarty, Land and Cazinova consciously choosing not to call for or provide medical assistance for Murriel despite being aware that Murriel was having trouble breathing, was having trouble speaking, and observing Murriel become nonresponsive consistent with passing out, Murriel died.

23.     The JPD knew of the Defendant officers' wrongful acts but covered them up by not releasing the video of the incident, or any of the incident reports to the public. Instead, they covered up that information.  Further, Defendants Willis, McCarty, Land and Cazinova's failure

to render medical aid and refusal and/or delay in seeking the proper medical aid and attention for Murriel amounted to cruel and unusual punishment in violation of the Eight Amendment to the United States Constitution.

24.     Defendants owed Murriel a duty to act reasonably, and exercise reasonable care, in carrying out their duty to provide medical care to individuals committed to their custody.

25.     Murriel posed no threat of imminent danger of death or great bodily harm to Defendants Willis, McCarty, Land and Cazinova, or any other person in the immediate area.

26.     Plaintiffs would also show that at all times material hereto, Defendants Willis, McCarty, Land and Cazinova were acting under the color of law at all relevant times.

27.     Moreover, no reasonably competent official would have concluded that the actions of Defendants Willis, McCarty, Land and Cazinova described herein would not violate Murriel's constitutional rights. In other words, no reasonably prudent police officer under similar circumstances could have believed that Defendants Willis, McCarty, Land and Cazinova's conduct was justified nor was the treatment of Murriel, reasonable.

28.     As a direct and proximate result of the Defendants' conduct, Plaintiffs have sustained substantial damages and pecuniary loss.

29.     Murriel was forty-one (41) years old when he died.  Murriel was in good health, with a reasonable life expectancy of living at least 43 more years to age 84.

### V.     CAUSES OF ACTION

**A.     Cause of Action against Willis, McCarty and Land under 42 U.S.C. §1983 for violation of Murriel's Fourth Amendment Right to be free from excessive force.**

30.     Plaintiffs incorporate by reference paragraphs 1 through 29 as if fully set forth herein. Plaintiffs would show that Defendants Willis, McCarty and Land's actions on the occasion in question were excessive and wrongful in depriving Murriel of his clearly

established constitutional rights and was not objectively reasonable under the circumstances as alleged more fully below.

31.     Plaintiffs would show that at all times material hereto, Defendants Willis, McCarty and Land had a duty to avoid infliction of unjustified bodily injury to Murriel, to protect his bodily integrity and to not trample on his constitutional rights, including the right to be free from the use of excessive force.

32.     Plaintiffs would show that Defendants Willis, McCarty and Land failed to act as a reasonable officer would have acted in the same or similar circumstances.  That is, Defendants Willis, McCarty and Land, without justification and the need to do so, tased Murriel over 80 times, and forcefully kneed Murriel in the head and back causing Murriel's face to almost touch his legs. Murriel was not attempting to harm or attack anyone when Defendants Willis, McCarty and Land made the decision to repeatedly tase and assault Murriel.  Defendants Willis, McCarty and Land's use of excessive force, coupled with placing and leaving Murriel in a prone position that made it difficult to breathe, eventually resulted in Murriel's injuries and subsequent death.

33.     The excessive force used by Defendants Willis, McCarty and Land was not reasonable, justified nor was it necessary under the circumstances.  Defendants Willis, McCarty and Land's actions were not objectively reasonable because they followed a procedure designed to inflict excessive force and bodily injuries in restraining individuals in a non-life-threatening situation.

34.     Further, Defendants Willis, McCarty and Land's conduct violated a clearly established constitutional right—the right to be free from excessive force—that was established well before Defendants Willis, McCarty and Land injured Murriel.  At the time of the incident, the law of the Fifth Circuit was clearly established that tasing a suspect who poses no threat to

the officers during the course of an arrest is an unconstitutional exercise of excessive force. *See Ramirez v. Martinez,* 716 F.3d 369, 379 (5th Cir. 2013) ("Here, Ramirez alleged he posed no threat to the officers and yet was tased twice, including once after he was handcuffed and subdued while lying face down on the ground, in violation of clearly established law."); *see also Clark v. Massengill,* 641 F. App'x 418, 420 (5th Cir. 2016)*; Carrol v. Ellington,* 800 F.3d 154, 177 (5th Cir. 2015)*; Guedry,* 703 F.3d 757, 763–64 (5th Cir. 2012)*; Gomez v. Chandler,* 163 F.3d 921, 922, 924–25 (5th Cir. 1999).

35.     The force used by Defendants Willis, McCarty and Land was unnecessary and unreasonable under the circumstances, as Murriel, who was not attempting to harm anyone and pleading for the Defendant officers to stop, did not require the use of such excessive force.

36.     "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Hanks v. Rogers,* 853 F.3d 738, 747 (5th Cir. 2017) (quoting *Graham,* 490 U.S. at 396). But, even then, the officer must appropriately calibrate the amount of force he employs to the need for the force he confronts. *Id.* (citing *Deville v. Marcantel,* 567 F.3d 156, 167 (5th Cir. 2009)). Thus, even if faced with a suspect who does not comply with instructions, the officer may consider that refusal in assessing whether physical force is needed, but in assessing that need must also consider the relationship between the need and the amount of force used. *Id.* (same). If a law enforcement officer uses excessive force in the course of making an arrest, the Fourth Amendment guarantee against unreasonable seizure is implicated. *King v. Chide*, 975 F.2d 653, 656 (5th Cir. 1992); *see Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force—

deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.'").

37.     The Supreme Court has long made clear that it is objectively unreasonable for a peace officer to repeatedly strike a non-resisting suspect." 524 F. App'x 69, 81 (5th Cir. 2013) (unpublished) (citing *Anderson v. McCaleb*, 480 F. App'x 768, 773 (5th Cir. 2012); *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)).  Although the right to make an arrest " 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it,' " the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee. *Saucier v. Katz,* 533 U.S. 194, 208, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  Defendants Willis, McCarty and Land use of excessive force was objectively unreasonable.  Murriel had not committed any penal offenses, was not resisting arrest, or attempting to flee when Defendants Willis, McCarty and Land repeatedly tased and kneed Murriel after he had been violently slammed to the ground.

38.     As a direct and proximate cause of the incident as set forth herein, Murriel incurred extreme pain, injuries and his death for which Plaintiffs seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

**B.     Cause of Action against Defendants under 42 U.S.C. § 1983 in violation of Murriel's Eighth and Fourteenth Amendment rights.**

39.     Plaintiffs incorporate by reference paragraphs 1 through 38 as if fully set forth herein.  Plaintiffs would show that Defendants' actions on the occasion in question were wrongful in depriving Murriel of his constitutional rights, as alleged more fully below.

### 1.      Failure to render Medical Aid

40.      Plaintiffs would show that at all times material hereto, Defendants were aware that Murriel was in a distress situation and was having difficulties breathing. Murriel pleaded with Defendants Willis, McCarty and Land, to stop tasing him to no avail.  Defendants Willis, McCarty, Land and Cazinova knew of Murriel's medical needs but failed to and/or refused to provide Murriel with the required care, including notifying AMR after tasing Murriel. Defendants' failure to provide Murriel with timely medical attention resulted in Murriel's death.

### 2.      The denial of medical care to Murriel.

41.      Defendants Willis, McCarty, and Land violated 42 U.S.C. § 1983 when they acted or failed to act with subjective deliberate indifference to Murriel's serious medical needs. Deliberate indifference exists when the official or officials refuse to treat Murriel, ignore medical complaints, or intentionally provide the incorrect medical treatment.  It was clearly established at the time that a prisoner has a constitutionally protected right to be free from a prison official's deliberate indifference to a prisoner's serious medical needs.  *See Easter v. Powell,* 467 F.3d 459, 465 (5th Cir. 2006).

42.      The Fourteenth Amendment guarantees pretrial detainees a right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Dyer v. Houston*, 955 F.3d 501,506 (5th Cir. 2020) (citing *Thompson v. Upshur Cty.*, Tex., 245 F.3d 447, 457 (5th Cir. 2001) (citing, inter alia, *Estelle v. Gamble*, 429 U.S. 97, 103 (1976))).

43.      Murriel had a constitutional right to medical care under the Fourteenth Amendment while in Defendants' custody.  Refusing to treat a prisoner's complaints can give rise to Section 1983 liability. *Galvan v. Calhoun Cty.*, 719 F. App'x 372 (5th Cir. 2018);

Easter v. Powell, 467 F.3d 459, 461-65 (5th Cir. 2006); *Harris v. Hegmann*, 198 F.3d 153, 159-60 (5th Cir. 1999); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 n.8. (5th Cir. 2017). An episodic-acts-or-omissions claim faults specific officials for their acts or omissions.

44. As to the individual in an episodic-acts-or-omissions claim, the relevant question becomes "whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 645 (5th Cir. 1996).

45. An official's actual knowledge of a substantial risk may only be inferred if the "substantial risk" was obvious. *Easter,* 467 F.3d at 463. Deliberate indifference is shown when a plaintiff properly alleges that officials "refused to treat him ... or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino,* 239 F.3d at 756 (quoting *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985)).

46. Defendants Willis, McCarty, and Land failed to follow proper medical guidelines by refusing to get Murriel the needed medical attention. Despite being aware that Murriel required medical attention, Murriel's obvious need for medical attention was ignored by Defendants.

47. Defendants' refusal to treat Murriel were acts of subjective deliberate indifference that caused an unconstitutional delay in medical treatment which caused Murriel's death.

**3. Defendants Willis, McCarty, Land and Cazinova were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed.**

48. Defendants Willis, McCarty, Land and Cazinova were aware of and ignored obvious indicia of a risk of serious harm, specifically including but not limited to, the facts that Murriel was unable to stand or walk, Murriel's breathing was labored, and Murriel became nonresponsive in the back of the police cruiser. Thus, Defendants Willis, McCarty, Land and

Cazinova were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. *Dyer*, 964 F.3d at 380.

> **4.    Defendants Willis, McCarty, Land and Cazinova actually drew that inference.**

49.    Defendants Willis, McCarty, Land and Cazinova drew this inference because they acknowledged that Murriel was unconscious and was aware that he had become nonresponsive.

50.    Further, Defendants Willis, McCarty, Land and Cazinova's actual knowledge of the substantial risk can be inferred because it was so obvious and the need was so apparent that even a laymen would recognize that care is required - as Murriel was unable to stand, Murriel's breathing was labored, Murriel became non-responsive in the back of the police cruiser, and Murriel became unconscious in the back of the patrol car. *Dyer,* 964 F.3d at 380; Thus, Defendants Willis, McCarty, Land and Cazinova drew the inference that a substantial risk of serious harm existed.

51.    Accordingly, Defendants Willis, McCarty, Land and Cazinova were deliberately indifferent to Murriel's health and safety because Defendants Willis, McCarty and Land "refused to treat him ... or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" by not providing medical care or summoning medical care for Murriel - instead laughing at Murriel. *Domino,* 239 F.3d at 756 (quoting *Johnson,* 759 F.2d at 1238).

> **5.    Officer Cazinova.**

52.    Plaintiff would show that Defendant Cazinova failed to act as a reasonable officer would have acted in the same or similar circumstances.  Defendant Cazinova is likewise liable for Defendants Willis, McCarty and Land's failure to render medical aid as either their supervisor or as a bystander.  A claim of bystander liability requires the claimant to prove (1) the

by-standing officer knew that a fellow officer was violating an individual's constitutional rights, and (2) the officer had a reasonable opportunity to prevent the violation, but chose not to act. Supervisory liability requires a showing that the supervisor acted, or failed to act, with deliberate indifference to their subordinates' constitutional violations. Both supervisory and bystander liability under Section 1983 are based on the principle that, by choosing not to intervene and prevent an unconstitutional exercise of excessive force, the passive officer effectively participates in his fellow officer's acts.

53.     Cazinova, like Defendants Willis, McCarty and Land, knew that Murriel was in need of medical attention but failed to check on Murriel, who was in the backseat of a police cruiser in medical distress.

54.     When Cazinova arrived on the scene, he was advised that Murriel was in the backseat of the police cruiser and was nonresponsive. There was adequate time for Cazinova to intervene to prevent Murriel's death.

55.     Cazinova had a reasonable opportunity to intervene, contact emergency personnel and to provide Murriel with medical attention but instead he simply chose not to do anything.

56.     By choosing not to intervene, Cazinova effectively participated in Defendants Willis, McCarty and Land's wrongful acts.

57.     Since at least 1995, it has been clearly established in the Fifth Circuit that an individual officer is subject to bystander liability under Section 1983 if he or she knew a constitutional violation was being committed by a fellow officer and had a reasonable opportunity to prevent the harm. *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017) (citing *Hale v. Townley*, 45 F.3d 914, 918 (5th Cir. 1995), for principle that "it was clearly established in the Fifth Circuit that an officer could be liable as a bystander in a case involving excessive

force if he knew a constitutional violation was taking place and had a reasonable opportunity to prevent the harm."). Likewise, it was clearly established at the time of the incident that a supervisor is subject to liability under Section 1983 where the supervisor, with deliberate indifference, failed to act or otherwise prevent the constitutional violations perpetrated by their subordinates. *See, e.g., Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

58.     As a direct and proximate result of Defendant Cazinova's failure to prevent Defendants Willis, McCarty and Land's violation of Murriel's constitutional rights and by refusing to render medical assistance to Murriel, Plaintiffs incurred extreme pain and injuries for which they seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## VI.     DAMAGES

59.     **Actual damages.** Plaintiffs incorporate by reference paragraphs 1 through 58 as if fully set forth herein. Defendants' acts and/or omissions were a proximate cause and the moving force behind the following actual damages suffered by the Plaintiffs and Defendants should be held jointly and severally liable for the following damages:

    **a.     Keisha Arnold, as next friend of minor, K.M. and the statutory beneficiaries (as wrongful death beneficiaries of Keith Murriel).**
       1.     Mental anguish—the emotional pain, torment, and suffering experienced by K.M. and the statutory beneficiaries because of the death of Keith Murriel—that K.M. and the statutory beneficiaries sustained in the past and that they will, in reasonable probability, sustain in the future;
       2.     Loss of companionship and society—the loss of the positive benefits flowing from the love, comfort, companionship, and society that K.M. and the statutory beneficiaries would have received from Keith Murriel had he lived—that K.M. and the statutory beneficiaries sustained in the past and that they will, in reasonable probability, sustain in the future;
       3.     Pecuniary loss—loss of the care, maintenance, support, services, advice, counsel, inheritance and reasonable contributions of a pecuniary value that K.M. and the statutory beneficiaries would have received from Keith Murriel had he lived—that K.M. and the statutory beneficiaries sustained

in the past and that they will, in reasonable probability will sustain in the future.

**b.      Keith Jackson (as wrongful death beneficiary of Keith Murriel).**

1.      Mental anguish—the emotional pain, torment, and suffering experienced by Keith Jackson because of the death of Keith Murriel—that Keith Jackson sustained in the past and that he will, in reasonable probability, sustain in the future;

2.      Loss of companionship and society—the loss of the positive benefits flowing from the love, comfort, companionship, and society that Keith Jackson would have received from Keith Murriel had he lived—that Keith Jackson sustained in the past and that he will, in reasonable probability, sustain in the future;

3.      Pecuniary loss—loss of the care, maintenance, support, services, advice, counsel, inheritance and reasonable contributions of a pecuniary value that Keith Jackson would have received from Keith Murriel had he lived—that Keith Jackson sustained in the past and that they will, in reasonable probability will sustain in the future.

**c.      Damages suffered by Keith Murriel prior to and as a result of his death.**

1.      Conscious pain and mental anguish suffered by Keith Murriel prior to his death; and

2.      Funeral and burial expenses.

3.      Loss of value of life.

4.      Exemplary Damages.

60.      **Punitive/Exemplary Damages against Defendants Willis, McCarty, Land and Cazinova.**

Punitive/exemplary damages are recoverable under section 1983 when the conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.  Here, the conduct of Defendants Willis, McCarty, Land and Cazinova was done with evil motive or intent, or at the very least, was reckless or callously indifferent to the federally protected rights of Murriel.  As such, Plaintiffs request punitive and exemplary damages from Defendants Willis, McCarty, Land and Cazinova to deter this type of conduct in the future.

61.      Prejudgment and post judgment interest.

62.      Costs of court.

63.     Reasonable and necessary attorney's fees incurred by the Plaintiffs through trial, and reasonable and necessary attorney's fees that may be incurred by Plaintiffs for any post-trial proceedings, or appeal, interlocutory or otherwise, pursuant to 42 U.S.C. § 1988.

64.      Plaintiffs seek unliquidated damages in an amount that is within the jurisdictional limits of the court.

## VII.   CONDITIONS PRECEDENT

65.     Plaintiffs reserve their right to plead and prove the damages to which they are entitled to at the time of trial.  All conditions to Plaintiffs' recovery have been performed or have occurred.

## VIII.   TRIAL BY JURY

66.     Plaintiffs demand a trial by jury.

## IX.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiffs have and recover judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiffs are justly entitled.


Respectfully submitted,


By:  /s/ Daryl K. Washington
DARYL K. WASHINGTON ( PHV # 44772)
Texas State Bar No. 24013714
**WASHINGTON LAW FIRM, P.C.**
325 N. St. Paul St., Suite 3950
Dallas, Texas 75201
214 880-4883
214-751-6685 – fax

By: /s/ E. Carlos Tanner, III, Esq.
E. CARLOS TANNER, III, ESQ. (MSB# 102713)
TANNER & ASSOCIATES, LLC
263 E. Pearl Street
Jackson, Mississippi 39201
Telephone: 601.460.1745
Facsimile: 662.796.3509

**ATTORNEYS FOR PLAINTIFFS**